[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared. The plaintiff was represented by counsel. The defendant appeared pro se. All statutory stays having expired, the court has jurisdiction. Having heard the evidence, the court finds as follows:
The defendant and the plaintiff, whose maiden name was Wholly, intermarried at Flaverhill, Massachusetts on May 25, 1991; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are two minor children issue of the marriage, Brianna Dimambro born July 6, 1993 and Nickolis Dimambro born November 16, 1998; that there were no other minor children born to the Plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably with no hope of reconciliation and that no state or public agency contributed to the support or maintenance of either party or their children.
The plaintiff testified that the defendant was physically abusive to her in June 1993; that it got worse, continuing about every two months, then weekly; that the defendant drank excessively until 1996; that defendant was out a couple of nights per week; that he was convicted of driving under the influence twice; that he lost his license; that she had to drive him back and forth to work from 1993 to 2002; that she left plaintiff in July 1996 but returned in two weeks; that although the defendant gave up his drinking, he was still verbally abusive to the plaintiff, that the parties had no relationship; that he moved downstairs in the marital residence; that defendant swore at the children; that she feared him since he owned guns; that she left him on January 31, 2002; that the verbal abuse continued after she left him and that he has threatened her twice since then.
The defendant admitted that he lost his license seven years ago and is living with a male friend in New Hampshire; that he is trying to reinstate his suspended New Hampshire license so that he can then attempt to get his Connecticut license reinstated. CT Page 12886
The defendant denied that he was physically abusive to the plaintiff, that it was plaintiff's fault that he drank; that plaintiff always contradicted the defendant in his relationship with their children; that the plaintiff would not listen to him; that he never threatened the plaintiff and that he has been emotionally affected by the divorce proceedings.
The court finds that the marriage of the parties has broken down irretrievably without any nope for reconciliation. I find the defendant more at fault for the breakdown of the marriage than he plaintiff.
The plaintiff, who was born May 12, 1962, appears to be in good health. She is an LPN, employed as a nurse manager at Mariner Health at Pendleton, Mystic, Connecticut. Her net weekly income is $693.37.
The defendant, who was born March 3, 1962, appears to be in good health. He is employed as a pipefitter at the New London Subbase. His net weekly income, when employed, $425.24.
Presently the defendant claims he is on temporary leave from his employment because of mental problems but received his pay under the provisions of the Family Relief Act until the last two or three weeks. Unless he returns to work soon, he will lose his employment.
He claims that he must be under the care of a psychiatrist to qualify for benefits and that he cannot return to work until his psychiatrist, Dr. Brian Veiner, okays his return. As yet, Dr. Brian Veiner has not authorized the defendant's return to work but has not arranged to see the defendant in the future.
The defendant seeks reasonable rights of visitation. However, because he does not have an automobile license, he wants the plaintiff to transport the minor children to and from the defendant's family in Lawrence, Massachusetts where he will pick up the children and return them there when his visitation is over.
The parties want to sell their marital property located at 195 Lake Road, Bozrah, but the defendant has not signed the listing contract. However, in court he agreed to do so. The plaintiff wants all of the net proceeds. The defendant wishes to divide the net proceeds with the plaintiff
During the marriage the parties became indebted to First USA for $25,000.00. The plaintiff claims that said debt was for family expenses, CT Page 12887 bail costs and automobile damages resulting from the defendant's driving under the influence convictions and accidents he was involved in. Therefore, she wants defendant to pay half of said debt. However, the defendant wants the plaintiff to file bankruptcy in her name only to discharge said debt. The plaintiff refuses to do so.
After plaintiff left the marital home, defendant lived there without paying the mortgage for seven months. The plaintiff wants the defendant to pay the mortgage payments for said period. She further asks that the defendant pay to her $770.00, his share of day care expenses as per the Child Support Guidelines; the arrearage of support due her totaling $388.00 as of the week ending September 6, 2002 and $200.00 in arrears on previously ordered attorney's fees.
Finally, plaintiff seeks from the defendant $119.00 support for the minor children and 24.00 per week on the above arrearages.
The parties received an IRS refund of $3,832.00. However, the State of New Hampshire took same in payment for the defendant's arrearage for support given by the State of New Hampshire to another child of the defendant's former marriage. Plaintiff seeks $2,911.50 75% of said refund as she had the higher income of the parties.
The parties' other requests and assets are deposed of in the orders of the court.
Based upon the evidence, judgment is entered dissolving the marriage on the grounds of irretrievable breakdown. After considering the evidence, the proposed orders submitted by the parties and the provisions of C.G.S. §§ 46b-62, 63, 81, 81 and 84, it is ordered:
1. No alimony is awarded to either party.
2. The parties shall share joint custody of the minor children, with primary residence to the plaintiff. The defendant shall have reasonable rights of visitation at his own expense provided he provides adequate transportation and accommodations and maintains sobriety before and during said visitations.
Said visitation shall include Christmas Eve with the defendant until 10:00 p.m. and Christmas Day with the plaintiff; Christmas school vacations shall be alternated, New Year's Eve from 7:00 p.m. to 11:00 a.m.; New Year's Day shall be alternated; Easter, Memorial Day and Labor Day shall be alternated each year; the children's birthdays shall be alternated; the plaintiff shall have every Mother's day from 9:00 am.; CT Page 12888 the defendant shall have every Father's Day by 9:00 a.m. and two weekends per month from Friday 7:30 p.m. until Sunday at 5:00 p.m. Each party shall have two weeks during the summer, provided notice of which two weeks is given to the plaintiff by the end of May each year.
In cases of difference of opinion with regard to decisions about the minor children, the plaintiff shall make the final determination. Also, in all other circumstances, the visitation shall remain at the reasonable discretion of the plaintiff until further order of the court.
3. The defendant shall pay child support of $119.00 per week through a wage garnishment upon defendant's wages. Further, the defendant shall pay 27% and the plaintiff 73% of all work-related daycare expenses.
4. The defendant shall provide medical insurance for the minor children as is available through his employment. Any health and medical costs of the minor children not covered by insurance shall be paid 75% by the plaintiff and 25% by the defendant.
5. The marital home at 195 Lake Pond, Bozrah, Connecticut shall be listed for sale by the plaintiff and the defendant. If the defendant refuses to sign the listing agreement within 30 days hereof, the property shall be sold pursuant to C.G.S. § 46b-81.
After payment of all costs of sale, mortgages, taxes, insurance, etc., the net proceeds shall be paid to the plaintiff. If the sale results in a deficiency, the parties shall each pay one-half of the deficiency and hold the other harmless as to their share of the deficiency.
6. The First USA debt of S25, OOO.OO shall be paid equally by the parties. Each party shall pay the other debts listed on their respective financial affidavits.
7. The plaintiff shall keep the 1993 Volvo subject to any loan on said automobile; pay all expenses on said vehicle and hold the defendant harmless thereon.
8. Each party shall keep any bank accounts listed on their financial affidavit.
9. The plaintiff shall keep, free of any harm from the defendant, her Navy Federal Credit IRA and her First Essex Bank IRA.
10. The plaintiff shall keep all the household furnishings and give to the defendant any of said items she does not want. CT Page 12889
11. The defendant shall return to the plaintiff the outside Weber grill, in good condition, if he has it. The plaintiff shall return any of the defendant's family heirloom rifles she has to her parent's home in Massachusetts where the defendant can pick them up.
12. The defendant shall pay the plaintiff $2,911.50 which is 75% of the tax refund to the parties within 90 days.
13. The parties shall each take one child as an exemption on their income tax provided each has a potential income tax liability. If neither party has a tax liability in any year, the other party shall take both children as exemptions for that year. When only one minor child remains, the parties shall alternate taking the child as an exemption, with the plaintiff taking the even numbered years and the defendant the odd numbered years, subject to the above provision relative to potential tax liability.
14. The defendant shall transfer to the plaintiff his FERS account as payment for the seven months he defaulted in paying the mortgage while he had exclusive possession of the marital home.
15. The defendant shall obtain and maintain a life insurance policy for $100,000.00 naming the plaintiff as trustee beneficiary for the minor children until such time as his obligation to provide child support ends.
16. Each party shall pay their own attorney's fees. CT Page 12890